UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEJANDRO HERNANDEZ-DELGADO,<br><br>Petitioner,<br><br>v.<br><br>MATTHEW ATCHLEY,<br><br>Respondent. | Case No. 20-CV-08108-LHK<br><br>**ORDER GRANTING MOTION TO HOLD FEDERAL HABEAS PROCEEDINGS IN ABEYANCE**<br><br>Re: Dkt. No. 2 |

Alejandro Hernandez-Delgado ("Petitioner") brings a petition for habeas corpus against Respondent Matthew Atchley. ECF No. 1. Before the Court is Petitioner's motion to hold his federal habeas proceedings in abeyance so that he may exhaust his claims in state court. ECF No. 2.[1] Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Petitioner's motion to hold his federal habeas proceedings in abeyance.

---

[1] Petitioner's motion to hold his federal habeas proceedings in abeyance contains a notice of motion that is contained in a separate document from the points and authorities in support of the motion. ECF No. 2, at 1. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

1
Case No. 20-CV-08108-LHK
ORDER GRANTING MOTION TO HOLD FEERAL HABEAS PROCEEDINGS IN ABEYANCE

## I. BACKGROUND

### A. Factual Background

On March 8, 2016, following trial in the California Superior Court for the County of Monterey, the jury found Petitioner guilty of first-degree murder, found that Petitioner committed the crime for the benefit of a criminal street gang, and found that Petitioner personally used a firearm. ECF No. 10 ("Opp'n") Exh. 1.

Juror Number 4 was visibly crying as the jury returned its verdict. Opp'n Exh. 2 at 10. Following the verdict, Petitioner's investigator interviewed Juror Number 4. *Id.* Juror Number 4 told Petitioner's investigator that one of the jurors "mention[ed] that the fact that [Petitioner] was from El Salvador, um, it made her feel he was more guilty because that's – so many murderers come from El Salvador[.]" *Id.* at 15. According to Juror Number 4, "other people right away said, 'You can't use that.'" *Id.* Juror Number 4 later stated that the juror "made a comment about El Salvadorians and that, um, people from El Salvador, that's where the gangs start and that's where – the kind of scarier people originate from." *Id.* at 24.

On May 6, 2016, Petitioner filed a motion for a new trial in the California Superior Court for the County of Monterey based on the violation of his constitutional rights to due process, a fair trial, and an impartial jury. Opp'n Exh. 2. Petitioner relied on the transcript of the interview with Juror Number 4 and contended that Petitioner "did not receive the legal benefit of twelve deliberating jurors." *Id.* at 4.

On June 28, 2016, the California Superior Court for the County of Monterey denied Petitioner's motion for a new trial because the trial court concluded that it would be improper to "go into the mental processes of jurors to determine what they were thinking when they came to their verdict." Opp'n Exh. 3; *id.* Exh. 5 at 33. On March 6, 2017, after Petitioner's trial, the United States Supreme Court held in *Peña-Rodriguez v. Colorado* that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant," state rules against considering the mental processes of jurors must "give way in order to permit the trial court to consider the evidence of the juror's statement." 137 S. Ct. 855, 869

(2017).

Petitioner appealed to the California Court of Appeal for the Sixth Appellate District. Opp'n Exh. 5. Petitioner argued that the case should be remanded to the trial court for reconsideration of Petitioner's motion for a new trial in light of the United States Supreme Court's decision in *Peña-Rodriguez*. *Id.*

On December 11, 2018, the California Court of Appeal for the Sixth Appellate District affirmed Petitioner's convictions and sentence. *Id.* The court assumed that the juror's statement was admissible and that it constituted misconduct. *Id.* However, the court concluded that Petitioner had not demonstrated he was prejudiced because "[w]hile improper, the El Salvador comment was brief, and the juror was immediately reprimanded by other jurors, who said, 'You can't use that.'" *Id.* On March 13, 2019, the California Supreme Court denied Petitioner's petition for review. Opp'n Exh. 6.

On June 10, 2019, Petitioner filed a petition for writ of certiorari with the United States Supreme Court. Opp'n Exh. 7. On November 18, 2019, the United States Supreme Court denied the petition. Opp'n Exh. 11.

On June 21, 2019, Petitioner filed a petition to unseal identifying juror information in the California Superior Court for the County of Monterey. Opp'n Exh. 8. Petitioner contended that he should be allowed to contact the jurors in order to investigate his habeas corpus claim alleging that his constitutional rights were violated by the juror's reliance on racial stereotypes. *Id.* at 4–7. On July 24, 2019, the California Superior Court for the County of Monterey denied Petitioner's petition. Opp'n Exh. 9.

On September 3, 2019, Petitioner appealed the order denying the petition to unseal identifying juror information. Opp'n Exh. 10. On May 1, 2020, the California Court of Appeal for the Sixth Appellate District reversed the denial of Petitioner's petition to unseal identifying juror information and concluded that the transcript of Juror Number 4's interview established a sufficient showing to support a reasonable belief that jury misconduct occurred. Opp'n Exh. 12. at 8. The California Court of Appeal for the Sixth Appellate District remanded to the California

Superior Court for the County of Monterey to set the matter for a hearing. Opp'n Exh. 12.

On January 28, 2021, the California Superior Court for the County of Monterey advised the parties that the court had contacted or attempted to contact all the jurors and alternates. Opp'n Exhs. 13, 14. On April 29, 2021, the California Superior Court for the County of Monterey released to both parties the names and addresses of the jurors and alternates who did not object to being contacted or did not respond, subject to a protective order. Opp'n Exhs. 15, 16.

### B. Procedural History

On November 17, 2020, Petitioner filed a petition for a writ of habeas corpus. ECF No. 1. Petitioner brings twelve claims for relief: (1) the trial court erred in denying the motion for a new trial; (2) the trial court abused its discretion in finding that the state had laid a proper foundation for the admission of photographs and communications from Facebook; (3) the trial court improperly admitted the Facebook evidence in violation of Petitioner's rights to confrontation and to due process; (4) the trial court improperly instructed the jury regarding Petitioner's gang enhancement; (5) the trial court erred in ordering further argument regarding CALCRIM 334; (6) the trial court erred in refusing Juror Number 12's request to be discharged; (7) there was insufficient evidence to sustain the gang enhancement; (8) Petitioner was convicted on the basis of race and/or national origin; (9) trial counsel was ineffective in not investigating and presenting youthful mitigation evidence; (10) trial counsel was ineffective in not moving to dismiss the information based on the inadequacy of the evidence supporting the gang enhancement allegation; (11) trial counsel was ineffective in failing to object to the prosecutor's misconduct in closing argument in asking the jury to rely on the gang evidence beyond its limited purpose; and (12) the cumulative errors in Petitioner's case violated his constitutional rights and require reversal of his convictions and sentence. *Id.*

On November 18, 2020, Petitioner filed the instant motion to hold his federal habeas proceedings in abeyance. ECF No. 2 ("Mot."). On July 12, 2021, Respondent filed an opposition. Opp'n. On July 19, 2021, Petitioner filed a reply. ECF No. 12 ("Reply").

## II. LEGAL STANDARD

The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); 28 U.S.C. § 2254(b). A district court must dismiss a habeas petition that contains both exhausted and unexhausted claims. *Rose*, 455 U.S. at 522.

However, a district court is permitted to stay a mixed petition containing both exhausted and unexhausted claims so that the petitioner may exhaust his claims in state court without running afoul of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Rhines v. Weber*, 544 U.S. 269, 273–75 (2005). A district court must stay a mixed petition if: (1) the petitioner has good cause for his failure to exhaust his claims, (2) the unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 278.

## III. DISCUSSION

For a federal court to consider habeas claims, the petitioner must have exhausted state remedies. *See Rose*, 455 U.S. at 522. In the instant case, the parties agree that Petitioner's petition is a mixed petition, or a petition that presents both exhausted claims and unexhausted claims. Mot. at 5; Opp'n at 2. Specifically, the parties agree that Petitioner has exhausted Claims 1 through 7, has not exhausted Claims 8 through 11, and has partially exhausted Claim 12. *Id.* In the instant motion, Petitioner moves to stay his federal habeas proceedings so that he can exhaust his unexhausted claims in state court.

Petitioner moves to stay his federal habeas proceedings under the United States Supreme Court's decision in *Rhines v. Weber*, 544 U.S. 269 (2005). In *Rhines*, the United States Supreme Court held that a district court has the discretion to stay a mixed habeas petition to permit the petitioner time to exhaust the unexhausted claims. *Rhines*, 544 U.S. at 277. The United States Supreme Court approved a stay of a mixed habeas petition in "limited circumstances" and stated that "it would likely be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if [1] the petitioner had good cause for his failure to exhaust, [2] his unexhausted

claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In the alternative, Petitioner moves to stay his federal habeas proceedings under the Ninth Circuit's decisions in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003) and *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009). Mot. at 5. "Pursuant to the *Kelly* procedure, (1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition." *King*, 564 F.3d at 1135. A petitioner seeking to use the *Kelly* procedure is not required to show good cause but must show that any newly exhausted claims share a "common core of operative facts" with the previously exhausted claims and comply with the statute of limitations. *Id.* at 1141–43. Although Respondent opposes Petitioner's request for a *Rhines* stay, Respondent does not oppose Petitioner's request for a *Kelly*/*King* stay. Opp'n at 1.

Below, the Court examines in turn: (1) whether there was good cause for Petitioner's failure to exhaust his claims first in state court; (2) whether Petitioner's claims have potential merit; and (3) whether Petitioner has engaged in intentionally dilatory litigation tactics. Because the Court concludes that Petitioner has shown good cause, Petitioner's claims have potential merit, and Petitioner has not engaged in intentionally dilatory litigation tactics, the Court concludes that a *Rhines* stay is warranted in the instant case. Because the Court concludes that a *Rhines* stay is warranted, the Court need not address whether a stay is warranted under *Kelly*/*King*.

**A. Good Cause**

First, a petitioner seeking a *Rhines* stay must show good cause for the failure to exhaust in state court. *Rhines*, 544 U.S. at 277. "There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 980–81 (9th Cir. 2014). "In *Rhines*, the [United States] Supreme Court did not explain the standard with precision . . . Similarly, [the Ninth Circuit's] cases on the meaning of good cause under *Rhines* are also sparse."

6

*Id.*

The United States Supreme Court has stated that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause.'" *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (concluding that a petitioner who is confused about whether his state proceeding will serve to toll the statute of limitations should file a "protective" petition in federal court and move for a stay).

The Ninth Circuit has stated that good cause does not require a showing of "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005) (holding that "the application of an 'extraordinary circumstances' standard does not comport with the 'good cause' standard prescribed by *Rhines*"). According to the Ninth Circuit, the good cause requirement "ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court." *Blake*, 745 F.3d at 982. Thus, "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence" to justify the petitioner's failure to exhaust the claim. *Id*. "While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will." *Id.*

Other courts in this district have concluded that good cause exists where the unexhausted claim is based on a change in law or newly discovered evidence. *See Tully v. Davis*, No. 18-CV-04763-EMC, 2020 WL 264667, at *2 (N.D. Cal. Jan. 16, 2020) (concluding that petitioner demonstrated good cause where petitioner's unexhausted claims were based upon "new evidence" or "new law"); *Leonardos v. Buddress*, No. 06-CV-07769-JSW, 2007 WL 1174825, at *3 (N.D. Cal. Apr. 19, 2007) (concluding that "newly discovered evidence weighs in favor of finding good cause"); *Lugo v. Kirkland*, No. 05-cv-00580-JF, 2006 WL 449130 at *4 (N.D. Cal. Feb. 3, 2006) (finding good cause based in part on new evidence that was only uncovered once new counsel commenced his investigation).

Similarly, in the instant case, Petitioner has failed to exhaust his juror bias claim because that claim is based on new law and new evidence. At the time of Petitioner's trial, state rules

7

1 dictated that the trial court could not inquire into the mental processes of a juror. Accordingly, the
2 California Superior Court for the County of Monterey denied Petitioner's motion for a new trial
3 because the court found it would be improper to "go into the mental processes of jurors to
4 determine what they were thinking when they came to their verdict." Opp'n Exh. 5 at 33.

5 However, following Petitioner's trial, the United States Supreme Court held in *Peña-
6 Rodriguez* that state rules against considering the mental processes of jurors must "give way"
7 where "a juror makes a clear statement that indicates he or she relied on racial stereotypes or
8 animus to convict a criminal defendant." *Peña-Rodriguez*, 137 S. Ct. at 869. Petitioner
9 subsequently filed a petition to unseal identifying juror information. Opp'n Exh. 8. On July 24,
10 2019, the California Superior Court for the County of Monterey denied Petitioner's petition.
11 Opp'n Exh. 9. On May 1, 2020, the California Court of Appeal for the Sixth Appellate District
12 reversed the denial of Petitioner's petition to unseal identifying juror information. Opp'n Exh. 12.
13 The California Superior Court for the County of Monterey did not release the identifying juror
14 information until April 29, 2021. Opp'n Exhs. 15, 16. Accordingly, identifying juror information,
15 which Petitioner needed in order to investigate his juror bias claim, was not available on
16 November 18, 2020, which was Petitioner's deadline for his federal habeas petition.

17 Respondent contends that Petitioner has not shown good cause because Petitioner waited
18 three years after Petitioner's investigator interviewed Juror Number 4 to file his petition to unseal
19 identifying juror information. Opp'n at 4. However, immediately after Petitioner's investigator
20 interviewed Juror Number 4, Petitioner filed a motion for a new trial in the California Superior
21 Court for the County of Monterey and contended that he "did not receive the legal benefit of
22 twelve deliberating jurors" based on the interview with Juror Number 4. Opp'n Exh. 2. The
23 California Superior Court for the County of Monterey denied Petitioner's motion for a new trial
24 because the court found it would be improper to "go into the mental processes of jurors to
25 determine what they were thinking when they came to their verdict." Opp'n Exh. 5 at 33. It was
26 only after Petitioner's motion for a new trial was denied that the United States Supreme Court held
27 that state rules against considering the mental processes of jurors must "give way" where "a juror

28
8
Case No. 20-CV-08108-LHK
ORDER GRANTING MOTION TO HOLD FEERAL HABEAS PROCEEDINGS IN ABEYANCE

makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Peña-Rodriguez*, 137 S. Ct. at 869. Since *Peña-Rodriguez* was decided, Petitioner has consistently relied on it to contend that his constitutional rights were violated, including by filing a motion to unseal identifying juror information. *See* Opp'n Exhs. 5, 7, 8. Accordingly, the Court does not conclude that a lengthy delay occurred.

In sum, the Court concludes that the unavailability of evidence to support Petitioner's juror bias claim constitutes a "reasonable excuse" that justifies Petitioner's failure to exhaust Petitioner's juror bias claim. *Blake*, 745 F.3d at 982. Thus, the Court concludes that there is good cause for Petitioner's failure to exhaust Petitioner's juror bias claim.

### B. Potential Merit

In addition to showing good cause, a petitioner seeking a *Rhines* stay must show that his unexhausted claims are "potentially meritorious." *Rhines*, 544 U.S. at 278. To satisfy this requirement, "[a] federal habeas petitioner must establish that at least one of his unexhausted claims is not 'plainly meritless.'" *Dixon v. Barker*, 847 F.3d 714, 722 (9th Cir. 2017). "This rule has been interpreted to mean that a stay is appropriate as long as at least one claim is not plainly meritless." *Tully*, 2020 WL 264667, at *3; *see also Davis v. Davis*, No. 13-CV-0408-EMC, 2015 WL 4512309, at *4 (N.D. Cal. July 24, 2015) (same).

"The standard for judging whether a claim is 'plainly meritless' for *Rhines* purposes is lenient." *Tully*, 2020 WL 264667, at *3. "In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Dixon*, 847 F.3d at 722 (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Thus, a federal court may deny a *Rhines* stay "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett*, 406 F.3d at 623–24.

In the instant case, Petitioner's juror bias claim has potential merit. Mot. at 9–10. Indeed, in *Peña-Rodriguez*, the United States Supreme Court found that a juror's "clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant" may

1  implicate a defendant's Sixth Amendment right to a jury trial. 137 S. Ct. at 869. In the instant case,
2  Juror Number 4 told Petitioner's investigator that one of the jurors said that Petitioner "was more
3  guilty because . . . so many murderers come from El Salvador[.]" *Id.* at 222.

4  Respondent contends that Petitioner fails to show that his juror bias claim has merit
because Juror Number 4 stated that other people on the jury reprimanded the juror and told the
juror that Petitioner's nationality could not be used to convict him. Opp'n at 4–5. However, the
Court cannot conclude solely based on the reprimand of the juror that Petitioner's juror bias claim
lacks merit. Rather, as the California Court of Appeal recognized when it reversed the denial of
Petitioner's petition to unseal identifying juror information, Petitioner's juror bias claim is worthy
of investigation. Opp'n Exh. 12. Accordingly, the Court concludes that Petitioner's juror bias
claim is potentially meritorious. *Rhines*, 544 U.S. at 277.

### C. Intentionally Dilatory Litigation Tactics

Finally, for a *Rhines* stay, a petitioner must not have engaged in "intentionally dilatory
litigation tactics." *Rhines*, 544 U.S. at 277. In the instant case, Respondent does not contend that
Petitioner has engaged in intentionally dilatory litigation tactics. The Court finds no basis to
conclude that Petitioner has engaged in intentionally dilatory litigation tactics. As to Petitioner's
state proceedings, as explained above, *supra* Section III(A), there was good cause for Petitioner's
failure to exhaust his juror bias claim. As to Petitioner's federal habeas proceedings, Petitioner
filed this federal habeas petition before the deadline. ECF No. 1. Just one day later, Petitioner filed
the instant motion to hold his federal habeas proceedings in abeyance. Mot. Accordingly, there is
no indication in the record that Petitioner has been intentionally dilatory.

In sum, the Court concludes that: (1) there is good cause for Petitioner's failure to exhaust
in state court; (2) Petitioner's unexhausted claims are potentially meritorious; and (3) Petitioner
has not engaged in intentionally dilatory litigation tactics. Because Petitioner has met these three
requirements, the Court concludes that Petitioner is entitled to a *Rhines* stay. *Id.* at 277.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's motion to hold federal habeas

proceedings in abeyance.

**IT IS SO ORDERED.**

Dated: August 13, 2021

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge